# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MICHAEL SHANE MOORE, )
)
    Plaintiff, )
)
        v. )   Case No. CIV-18-126-SPS
)
ANDREW M. SAUL, )
**Commissioner of the Social** )
**Security Administration,**[1] )
)
    Defendant. )

## OPINION AND ORDER

The claimant Michael Shane Moore requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty years old at the time of the administrative hearing (Tr. 115). He has a high school equivalent education and has worked as a semi-truck driver, industrial truck mechanic, and industrial maintenance repairer (Tr. 118, 131). The claimant alleges that he has been unable to work since May 27, 2015, due to a back injury, double lumbar fusion at L3-L5, hip and joint pain, spinal nerve damage that causes a left foot burning sensation, and arthritis (Tr. 315).

**Procedural History**

In July 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 264-71). His applications were denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 5, 2017 (Tr. 90-103). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work with

occasional climbing stairs, balancing, bending, stooping, kneeling, crouching, and crawling, but should avoid climbing ladders, ropes, and scaffolding (Tr. 93). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, document specialist, touch-up screener, and surveillance system monitor (Tr. 102-03).

**Review**

The claimant contends that the ALJ erred by failing to properly: (i) analyze the opinions of nurse practitioner Kelly Hokit and physical therapist Christopher Ritchie, and (ii) evaluate his subjective statements. The Court finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant's obesity, degenerative disc disease status post fusion, hip pain, and asthma/chronic obstructive pulmonary disease were severe impairments; his gastroesophageal reflux disease, hypertension, high cholesterol, and tinnitus were nonsevere impairments; and his sleep apnea and irritable bowel syndrome were not medically determinable (Tr. 93). The medical evidence relevant to this appeal reveals that on October 7, 2013, the claimant underwent a discectomy and fusion at L4-5 and L5-S1, and a laminectomy at L4-5 performed by Dr. Benjamin Benner and Dr. Ryan Rahhal (Tr. 399, 406-10). At a follow-up appointment on October 22, 2013, Dr. Benner indicated that the claimant's progress was satisfactory (Tr. 435). The record does not contain any further treatment notes from Dr. Benner or Dr. Rahhal.

Dr. Christopher Sudduth conducted a consultative physical examination of the claimant on October 10, 2015 (Tr. 477-83). He found significant pain and significantly decreased range of motion in the claimant's lumbar spine as well as positive straight leg raise tests bilaterally (Tr. 479). The claimant's gait was safe and stable with appropriate speed and he did not require a walking aid, but his heel/toe walking was weak (Tr. 479). Dr. Sudduth opined that due to the claimant's "significant lumbar spine impairment," he was "unable to work any job that required physical exertion such as a mechanic and truck driver." (Tr. 479).

On October 28, 2015, state agency physician Dr. Ronald Painton completed a physical RFC assessment and found the claimant could perform light work with frequent kneeling and crawling, and occasional stooping (Tr. 147-49). His findings were affirmed on review (Tr. 169-71).

The claimant established care with nurse practitioner Kelly Hokit on October 12, 2015,and reported low back pain radiating down his left leg (Tr. 495-96). Ms. Hokit diagnosed the claimant with lumbago with left side sciatica (Tr. 496). At a follow-up appointment on November 11, 2015, the claimant requested paperwork that stated his back prevented him from working and Ms. Hokit explained that testing would need to be completed to determine the degree of his back problems (Tr. 492). Ms. Hokit found no paravertebral tenderness in the claimant's lumbar area, but a straight leg test was positive, and the claimant had limited lateral bending, spine extension, and flexion; she referred the claimant for imaging of his back (Tr. 493). A November 19, 2015, lumbar spine x-ray revealed no acute osseous pathology, post-surgical changes with no acute complication

noted, and trace grade 1 retrolisthesis of L4 on L5 (Tr. 510). A CT scan performed on December 8, 2015 revealed grade 1 retrolisthesis of L4 on L5 with mild bilateral neural foraminal narrowing and degenerative disc disease of L4-L5 and L5-S1 (Tr. 514). On January 18, 2016, the claimant reported continued severe back pain limiting his activities of daily living (Tr. 489). Ms. Hokit noted the claimant presented with very lengthy paperwork that he stated was not a part of disability but would help pay for some of his medical bills (Tr. 489). Physical examination revealed the claimant's lumbar paravertebral muscles were tender to palpation and his flexion and extension were limited (Tr. 490). At a follow-up appointment in April 2016, the claimant reported some improvement in his back pain and Ms. Hokit noted no musculoskeletal abnormalities on physical examination (Tr. 534-35).

On January 18, 2016, Ms. Hokit completed forms regarding unskilled work requirements, sedentary work requirements, absences from work, and a clinical assessment of pain (Tr. 484). In these forms, Ms. Hokit indicated, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours, lift five pounds on a repetitive basis, sustain activity at a pace and with the attention to task as would be required in the competitive workplace, or attend any employment on a sustained basis (Tr. 487). She also indicated that physical work activities would increase the claimant's pain to such an extent that rest and/or medication would be necessary, that his pain would reduce basic mental work activities but not to such an extent as to prevent adequate functioning in such tasks, and that his medications may cause some limitations in his ability to perform work activity but not to such a degree as to create a serious problem in most

instances (Tr. 485). As to unskilled work requirements, Ms. Hokit opined, *inter alia,* that the claimant could understand, remember, and carry out simple instructions; respond appropriately to supervision and coworkers; but could not maintain concentration and attention for extended periods (Tr. 486). Ms. Hokit also indicated that the claimant would be absent from work three or more days per month (Tr. 484).

Although the record contains no treatment notes from the claimant's physical therapist, physical therapist Christopher Ritchie completed a physical RFC assessment on October 6, 2016 (Tr. 576-80). He indicated that the claimant could sit for fifteen minutes at a time for less than two hours total in an eight-hour workday, could stand for thirty minutes at a time for less than two hours total in an eight-hour workday, and required a ten-minute period of walking every fifteen minutes (Tr. 577-78). He also indicated the claimant would need unscheduled breaks at least once per hour lasting fifteen or twenty minutes each (Tr. 578). Mr. Ritchie found that the claimant could frequently lift/carry less than ten pounds and could never lift/carry anything above twenty pounds (Tr. 578). Mr. Ritchie also found that the clamant could rarely climb stairs, and could never twist, stoop, crouch, or climb ladders (Tr. 579). He opined that the claimant would be absent from work more than four days per month (Tr. 579). Mr. Ritchie indicated that the limitations he found had been applicable since August 1, 2012 (Tr. 580).

At the administrative hearing, the claimant testified that he injured his back in August 2012 (Tr. 124-25). He further testified that he left his last truck driving job in May 2015 because he was not able to take pain medication, could not rest, and required his wife's assistance on the truck (Tr. 125). When describing his physical impairments, the

claimant stated that his back pain was "key" in that the nerve damage radiates a constant "fire feeling" through his left hip, leg, knee, and toes, and causes his hands to randomly "open up" several times per day (Tr. 126-129). He also stated that the metal hardware and inflammation in his back prevent him from bending, kneeling, and stooping (Tr. 126). The claimant indicated that his pain medications improved his pain and a spinal injection temporarily increased his mobility, but that he can only obtain injections twice per year (Tr. 127). As to specific limitations, the claimant testified he could sit for thirty minutes and lift sixteen pounds (Tr. 126, 129). Regarding his activities of daily living, the claimant indicated that his wife bathes him, he grocery shops once per year, and that he does not do any house work or yard work (Tr. 130). He testified that he spends most of his day sitting on a couch with his knees pulled up towards his chest because this position relieves the most stress (Tr. 130).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony and the medical records, including the opinions of Dr. Sudduth, Ms. Hokit, and Mr. Ritchie. In discussing the opinion evidence, he gave great weight to Dr. Sudduth's consultative opinion, finding he performed a thorough examination, objective medical evidence substantiated his opinion, and his opinion portrayed a more accurate assessment of the claimant's limitations (Tr. 101). The ALJ then gave little weight to the opinions of Ms. Hokit and Mr. Ritchie because their limitations were extreme and not corroborated by the medical evidence of record (Tr. 101). The ALJ gave the state agency physicians' opinions some weight, but further limited the claimant to sedentary work in light of the medical evidence of record after their opinions were issued (Tr. 101). In discussing the claimant's

subjective statements, the ALJ concluded that his statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 94). In making such conclusion, the ALJ noted several inconsistencies between the claimant's subjective statements of pain and the evidence of record, including: (i) his own Function Report, (ii) his daily activities, (iii) a Third Party Function Report completed by his wife, and (iv) Dr. Sudduth's consultative examination findings and opinion (Tr. 100-01).

The claimant first contends that the ALJ did not properly consider the opinions of Ms. Hokit and Mr. Ritchie. Social Security regulations provide for the proper consideration of "other source" opinions such as those provided by Ms. Hokit and Mr. Ritchie herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion

is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *4-5; 20 C.F.R. §§ 404.1527(c), 416.927(c). In evaluating the opinions of Ms. Hokit and Mr. Ritchie, the ALJ found no support in the medical record for their extreme limitations (Tr. 101). Prior to making this determination, the ALJ thoroughly discussed all the evidence in the record, including Ms. Hokit's treatment notes and examination findings, as well as the December 2015 lumbar CT scan she ordered (Tr. 94-100). The ALJ also explained that he limited the claimant to sedentary work in light of the evidence dated after the state agency physicians issued their opinions, which includes Ms. Hokit's treatment notes and opinion, as well as Mr. Ritchie's opinion (which was unaccompanied by supporting treatment notes) (Tr. 101). The ALJ thus gave due consideration to the opinions of Ms. Hokit and Mr. Ritchie and ensured that the Court could follow his reasoning.

The claimant also contends that the ALJ erred in analyzing his subjective statements. The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See, e. g., Keyes-Zachary,* 695 F.3d at 1166-67, citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna*). The Court agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient. *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10.

In this case, the Court finds that the ALJ set out the appropriate analysis and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged as described above, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Accordingly, the ALJ's determination is entitled to deference and the Court finds no error in analyzing the claimant's subjective statements.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 12th day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**